IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BERNARD L. TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-96–HEH |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
(Granting Defendant's Motion to Dismiss and Denying Plaintiff's Motion for Summary Judgment)

THIS MATTER is before the Court on Defendant United States of America's ("United States") Motion to Dismiss ("Motion to Dismiss," ECF No. 25), filed on April 17, 2024, as well as Plaintiff, Bernard L. Tucker's ("Plaintiff") Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 28), filed on May 8, 2024. The United States seeks to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss at 1.) Plaintiff seeks summary judgment in his favor pursuant to Rule 56. (Mot. for Summ. J. at 1.)

The parties have submitted memoranda in support of their respective arguments. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. VA. LOC. CIV. R. 7(J). For the reasons stated herein, the Court will grant the United States' Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff, proceeding *pro se*, is a disabled United States Army veteran who served in the Vietnam war. (Am. Compl. at 1, ECF No. 23.) Plaintiff was a patient at Hunter Holmes McGuire Hospital, the Richmond Veterans Administration Medical Center (the "VA"), from 2010 until 2022. (*Id.* at 1, 14; *see also* Compl. at 2, ECF No. 1; Ex. 1 at 1, 3, 28, ECF No. 1-1.) Sometime in 2010, Harriet Foster, M.D. ("Dr. Foster"), at the VA, prescribed Plaintiff medications for hypertension (high blood pressure). (Am. Compl. at 4, 10.) The medications were Lisinopril and Diltiazem. (*Id.*)

In 2014, Dr. Foster told Plaintiff his heartbeat was slow, and recommended Plaintiff receive a pacemaker.[1] (*Id.* at 10.) At that time, Plaintiff was experiencing fainting spells. (*Id.*) Plaintiff declined the pacemaker, and then "constantly complained to [his] doctor from 2010 to 2014 that the prescription drugs were not working, and it appeared to [him] that the prescription drugs had made [his] health condition worse." (*Id.* at 5, 10.) Plaintiff continued to seek treatment for his fainting spells at the VA until 2021 but was not satisfied with Dr. Foster's continuous recommendations of a pacemaker. (Am. Compl. at 7–9, 13–14, 21, 26.) Plaintiff felt "nothing was being done to diagnose and treat the passing out spells and hypertension." (*Id.* at 9.)

When Plaintiff declined the pacemaker, Dr. Foster informed Plaintiff that he

---

[1] While it is clear from the record that Dr. Harriet Foster was Plaintiff's doctor from at least June 2013 to June 2014, it is unclear whether Dr. Foster or another VA doctor initially recommended Plaintiff get a pacemaker because Plaintiff sometimes uses the pronoun "he" when discussing his doctor's recommendation for a pacemaker. (Am. Compl. at 5.) However, it is clear that Dr. Foster agreed with the recommendation and continued to recommend Plaintiff receive a pacemaker. (*Compare* Am. Compl. at 5, *with* Am. Compl. at 10, 25–26.)

2

should not drive a motor vehicle unless and until he accepts a pacemaker. (*Id.* at 9, 25.) Dr. Foster then also informed the Virginia Department of Motor Vehicles ("DMV") Medical Review Officer that Plaintiff should not drive, which resulted in suspension of Plaintiff's license "without performing any medical test or examinations." (*Id.* at 5, 10; *see also* Ex. 1 at 28.)

In January 2021, Plaintiff sought another medical opinion, from Gautham Kalahasty, M.D. ("Dr. Kalahasty") at Virginia Commonwealth University ("VCU") Hospital. (Am. Compl. at 9–10; *see* Ex. 1 at 30.) Dr. Kalahasty conducted a thirty (30) day Holter Monitor evaluation of Plaintiff's heart, which returned normal results. (Am. Compl. at 11.)

Meanwhile, Plaintiff continued to see Dr. Foster at the VA until he was assigned a new VA doctor, Jared Fisher, M.D. ("Dr. Fisher"), in "May or June" 2021. (Am. Compl. at 11.) Dr. Fisher also conducted at least one (1) seventy-two (72) hour Holter Monitor evaluation, which also "came back normal." (*Id.* at 11–12.) Plaintiff asked Dr. Fisher to inform the DMV that he was healthy enough to drive, but Dr. Fisher declined to do so. (*Id.* at 12.) Plaintiff requested his VA medical records in 2014 and again in 2024, and his patient advocate requested them in 2022, but Plaintiff claims he has not received them. (Am. Compl. at 5–6, 28; *see* Ex. 1 at 34.)

In 2022, Plaintiff sought yet another medical opinion outside of the VA for his fainting spells, this time at one of the Bon Secours medical facilities in Richmond,

3

Virginia. (*Id.* at 14.) The doctor(s)[2] at Bon Secours informed Plaintiff that Lisinopril is known to cause "light[-]headed[ness] and dizzy spells" as side-effects. (*Id.* at 15.) Plaintiff had already independently decided to stop taking his Diltiazem, and, after receiving this information, he stopped taking Lisinopril as well. (*Id.*) Plaintiff has not fainted since he stopped taking both medications. (*Id.*)

In April 2022, Plaintiff brought his medical documentation from VCU to the DMV, which consequently reinstated Plaintiff's license. (*See* Compl. at 13; Ex. 1 at 31–32.) Unfortunately, in 2019, prior to his license reinstatement, Plaintiff's wife passed away. (Am. Compl. at 17.) Plaintiff attributes his wife's death to her driving long hours in Plaintiff's service van, which did not have air conditioning, to allow Plaintiff to continue working as an HVAC technician after his license was suspended in 2014. (*Id.*; *see also* Compl. at 10–12.) Plaintiff claims he could not afford to install air conditioning because of his decrease in salary, which he also attributes to the loss of his license. (*See* Compl. at 11.)

Plaintiff first filed an administrative tort claim with the VA hospital on May 17, 2022, which the VA denied on January 6, 2023. (*See* Ex. 1 at 1; Compl. at 2.) Plaintiff then filed this suit with the Court on February 7, 2023. (*Id.* at 27.) In his initial Complaint with this Court, Plaintiff's claims against the United States included medical malpractice, negligence, and "misrepresentation or deceit" under the Federal Tort Claims Act ("FTCA"). (Compl. at 3; *see* Mem. Order at 7, ECF No. 17.)

---

[2] Plaintiff does not provide names or qualifications for the Bon Secours staff and does not state with how many medical providers he met.

4

The United States moved to dismiss the initial Complaint, arguing that the statute of limitations for an FTCA claim had lapsed and that Plaintiff failed to sufficiently allege facts in support of his claims. (Def.'s Mot. to Dismiss, ECF No. 9; Def.'s Mem. in Supp., ECF No. 10.) The Court granted the motion in part and dismissed Plaintiff's misrepresentation claim with prejudice. (Mem. Order at 10.) However, the Court dismissed Plaintiff's malpractice claim without prejudice, reasoning that there was insufficient information in the record to determine whether the statute of limitations had lapsed. (*Id.* at 8.) The Court also denied the motion insofar as it applied to Plaintiff's negligence claim because the United States altogether failed to address negligence in its briefs. (*Id.* at 10.) The Court granted Plaintiff leave to amend his Complaint. (*Id.*)

Subsequently, Plaintiff filed an Amended Complaint on April 3, 2024, (ECF No. 20) as well as a corrected version (the "Amended Complaint," ECF No. 23) two (2) days later. The United States moved to dismiss Plaintiff's Amended Complaint—which the Court considers herein. (*See* Mot. to Dismiss; *see also* Def.'s Mem. in Supp., ECF No. 26.) Plaintiff also filed a Motion for Summary Judgment (*See* Mot. for Summ. J.) and both parties filed memoranda in support of their respective arguments.

## II. LEGAL STANDARD

District courts must liberally construe a *pro se* litigant's complaint. *E.g., Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). However, courts need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* The Fourth Circuit has explained that "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the

5

clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

As the Court best construes Plaintiff's Amended Complaint, Plaintiff brings claims against the United States for medical malpractice and negligence, loss of companionship, medical extortion, and blackmail. (*See* Am. Compl. at 5–8, 14, 18, 24.)

### A. Rule 56 Motion for Summary Judgment

Plaintiff has moved for summary judgment while there is a pending motion to dismiss from the United States. To prevail on a Rule 56 motion for summary judgment, Plaintiff must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff's motion must also be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

Here, Plaintiff has not provided the Court sufficient support for the Court to rule in his favor on a motion for summary judgment. Plaintiff's motion simply reiterates his allegations, which are substantiated only by a letter from 2021 by Mr. Nelson, Plaintiff's "Patient Advocate." (*See* Ex. 1.) Accordingly, Plaintiff's Motion for Summary Judgment will be denied.

### B. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

The United States contends that some of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because they were made after the FTCA's statute of limitations had lapsed. (Def.'s Mem. in Supp. at 5–9.) The relevant section of the FTCA states, "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date . . . of notice of final denial of the claim by the agency." 28 U.S.C. § 2401(b).

When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to hear the case. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Although the Fourth Circuit has previously considered the FTCA's statute of limitations to be a jurisdictional issue,[3] the Supreme Court of the United States has since explicitly held it to be nonjurisdictional. In *United States v. Kwai Fun Wong*, the Supreme Court held "that the FTCA's time bars are nonjurisdictional" in a case with dual plaintiffs who failed to submit claims within either the two (2) year or the subsequent six (6) month-from-the-agency's-denial statute

---

[3] *Ammer v. United States*, 1995 WL 318771, at *1 (4th Cir. May 26, 1995) (affirming the district court's dismissal "for lack of subject matter jurisdiction" where the plaintiff filed an FTCA with the court after two (2) years (citing *Tillman v. RTC*, 37 F.3d 1032, 1034 (4th Cir. 1994)); *Ahmed v. United States*, 30 F.3d 514, 516, 518 (4th Cir. 1994) (affirming the district court's dismissal of an FTCA claim that was not filed within two years because "the requirement of filing an administrative claim [within the statute of limitations] is jurisdictional and may not be waived" (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986))); *see also Taylor v. Bright*, 2000 WL 1144624, at *2–3 (4th Cir. Aug. 14, 2000) ("[E]xhaustion of administrative remedies is a *jurisdictional* pre-requisite to the district court's jurisdiction" (emphasis added)).

7

of limitations. 575 U.S. 402, 406–07, 420 (2015). Writing for the majority, Justice Kagan reasoned that Congress did not intend for the FTCA's statute of limitations to be jurisdictional, based on the plain language and context of § 2401(b). *Id.* at 411–20.

Although the FTCA's statute of limitations has been held to be nonjurisdictional, the United States brought a 12(b)(6) motion in conjunction with its 12(b)(1) motion. (Mot. to Dismiss.) As such, this Court considers the United States' statute of limitations argument as a nonjurisdictional one and only evaluates whether Plaintiffs claims should be dismissed pursuant to the standard in Rule 12(b)(6).

### C. Rule 12(b)(6) Motion to Dismiss

A plaintiff must "allege facts sufficient to state all the elements of [their] claim" to survive a motion to dismiss. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)). Courts take plaintiffs' well-pled allegations as true and view complaints in the light most favorable to plaintiffs when considering motions to dismiss. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs also must allege facts that amount to a claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A sufficiently pled claim need only be "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

8

'give the defendant fair notice'" of the "plausible" claim and its bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Complaints containing only "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* at 555.

### III. DISCUSSION

In his Amended Complaint, Plaintiff primarily brings a Virginia Medical Malpractice Act ("VMMA") claim. (Am. Compl. at 3.) The United States does not waive sovereign immunity for such state claims. The Court liberally construes Plaintiff's VMMA claim as an extension of Plaintiff's initial FTCA claim. (*See* Def.'s Mem. in Supp. at 1.) Taking Plaintiff's Amended Complaint and subsequent filings into consideration, the Court understands Plaintiff's claims to include: (1) medical malpractice and negligence[4] relating to the VA's failing to diagnose the cause of his fainting spells, prescribing Lisinopril, recommending a pacemaker, and failing to provide medical documentation,[5] (2) wrongful death of his spouse,[6] and (3) medical extortion and

---

[4] In the Court's consideration of the United States' first Motion to Dismiss, it separately considered Plaintiff's malpractice and negligence claims. The Court agrees with the United States' argument that the VMMA's definition of medical malpractice encompasses all torts, including negligence. (Def.'s Mot. in Supp. at 1 n.1.) Since the elements of medical malpractice and negligence are substantially the same (*Compare Blevins v. Sheshadri*, 313 F. Supp. 2d 598, 601 (W.D. Va. 2004) (citing *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982)), *with Curran v. Axon Enter., Inc.*, 57 F.4th 190, 195–96 (4th Cir. 2023)), the Court analyzes Plaintiff's malpractice and negligence claims together.

[5] The Court evaluates each claim in this list as a separate instance of malpractice and negligence, as indicated by sub-headings.

[6] Plaintiff uses the phrase "Loss of Companionship" (Am. Compl. at 18) which is a factor in considering damages for a Wrongful Death claim in Virginia. The United States considered Plaintiff's claim to be "Loss of Consortium" (Mem. in Supp. at 12), a claim which Virginia does

9

blackmail. (*See* Am. Compl. at 5–8, 14, 18, 20–24.)

## A. The Statute of Limitations Has Lapsed

First, the United States asserts that Plaintiff's claims are barred by the two (2) year statute of limitations for FTCA claims under 28 U.S.C. § 2401(b). (Def.'s Mem. in Supp. at 5–9.) The United States argues that Plaintiff's claims began to accrue as soon as he "knew of his injuries and their cause in 2014," which was "eight [(8)] years prior to the date, May 17, 2022, when Plaintiff filed his administrative tort claim." (Def.'s Reply at 1, 7.)

A medical malpractice claim under the FTCA "accrues when plaintiffs know, or in the exercise of due diligence should have known, both their injury and the injury's probable cause." *Pinilla v. United States*, 760 Fed. App'x 164, 168 (4th Cir. 2019) (citing *United States v. Kubrick*, 444 U.S. 111, 120–22 (1979)). Thus, plaintiffs do not need to know that they have a cause of action for which they could make a claim, but merely need to know of the injury and its possible cause. *See id.* Therefore, the statute of limitations period begins "even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." *Hahn v. United States*, 313 Fed. App'x 582, 585 (4th Cir. 2008) (citing *Kerstetter v. United States*, 57 F.3d 362, 364–65 (4th Cir. 1995)).

---

not recognize. However, Virginia Code § 8.01-50(B) provides a right of action for wrongful death due to negligence, and § 8.01-52(1) includes "solace which may include . . . companionship . . . of the decedent" as a factor in determining damages for a wrongful death claim. The Court construes Plaintiff's loss of companionship claim as a tort claim against the United States for wrongful death pursuant to the FTCA.

10

### i. Malpractice and negligence claims for failing to diagnose fainting spells and prescribing Lisinopril

The Court finds that the statute of limitations has lapsed for Plaintiff's medical malpractice and negligence claims for the VA's failing to diagnose the cause of Plaintiff's fainting spells and prescribing Lisinopril.

In his Amended Complaint, Plaintiff explains that Dr. Foster prescribed him Lisinopril and Diltiazem sometime in or around 2010, and subsequently Plaintiff "complained to [his] doctor that [he] began to experience dizzy spells, fainting, and passing out." (Am. Compl. at 4.) Plaintiff "constantly complained to [his] doctor from 2010 to 2014 that the prescription drugs were not working, and it appeared to [Plaintiff] that the prescription drugs had made [his] health condition worse." (*Id.*)

Accordingly, Plaintiff demonstrates that in 2014 he had knowledge of his injuries with an awareness that the VA may have been responsible. Once Plaintiff was aware of his fainting and believed it was due to the medications Dr. Foster prescribed, the claim began to accrue. While Plaintiff may not have had actual knowledge that he could make a legal claim at that time, the statute of limitations period nevertheless began in 2014 "when the wrongful act or omission result[ed] in damages." *See Sebolt v. Pindelski*, 2022 WL 2828274, at *2 (4th Cir. July 20, 2022) ("Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he has been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief" (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007))); (Am. Compl. at 4).

Plaintiff first raised his claim for these harms on May 17, 2022, when he filed an

11

administrative tort claim with the VA, at least eight (8) years after the claim began to accrue. (Ex. 1 at 1; *see* Am. Compl. at 26.) As such, Plaintiff's medical malpractice and negligence claims for the VA failing to diagnose the cause of Plaintiff's fainting spells and prescribing Lisinopril are barred by the FTCA's two (2) year statute of limitations.[7] Thus, the Court will dismiss this claim with prejudice.

### ii. Wrongful death claim

Plaintiff alleges that the VA caused a "loss of companionship" in his life when his wife passed away. Virginia Code § 8.01-50(B) provides a right of action for wrongful death due to negligence, for which loss of companionship is a factor in considering damages. *See* Va. Code § 8.01-52(1). The Court extends its sincerest sympathies to Plaintiff due to the passing of his wife. However, Plaintiff's loss of companionship predates his claim by more than two (2) years. Plaintiff's wife passed away on April 9, 2019, and Plaintiff filed his administrative tort claim twenty-five (25) months later, on May 17, 2022. (*Compare* Mem. in Supp. at 13, *with* Ex. 1 at 1.) Plaintiff's wrongful death claim is thus barred by the FTCA's statute of limitations, and the claim will be dismissed with prejudice.[8]

---

[7] In addition to not meeting the statute of limitations, Plaintiff's claim for medical malpractice and negligence due to the VA failing to diagnose his fainting spells and prescribing him Lisinopril also fails to survive the Rule 12(b)(6) motion because Plaintiff fails to state a claim. First, the doctors did not fail to offer Plaintiff treatment: they recommended he receive a pacemaker, and he refused (as is his right). Second, Plaintiff's disagreement with and refusal to undergo the doctors' offered care, and taking himself "off one of the blood pressure drugs after consulting with [his] patient advocate," who is notably not a doctor, breaks the causal chain between the doctors' duty of care and any alleged harm. (*See id.* at 4–6, 15.)

[8] If Plaintiff had filed this claim within the statutory period, it would be dismissed because

### B. Plaintiff Failed to State a Claim for which Relief can be Granted

The remaining claims are not clearly associated with dates in the record such that they should be dismissed pursuant to the FTCA's statute of limitations. Nonetheless, they will be dismissed because Plaintiff has not stated claims upon which relief can be granted.

#### i. Medical malpractice and negligence claim: recommending pacemaker

The United States argues that Plaintiff has not sufficiently alleged a medical malpractice claim under the VMMA as adopted by the FTCA. (Mem. in Supp. at 9; *see also Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) ("State law determines whether there is an underlying cause of action.").) To establish a medical malpractice claim in Virginia, Plaintiff must show: "(1) the applicable standard of care, (2) that the standard has been violated, and (3) that there is a causal relationship between the violation and the alleged harm." *Blevins v. Sheshadri*, 313 F. Supp. 2d 598, 601 (W.D. Va. 2004) (citing *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982)).

The VA doctors undoubtedly owed Plaintiff, their patient, a duty of care. In his Amended Complaint, Plaintiff alleges that Dr. Foster violated that duty when she recommended Plaintiff receive a pacemaker because he did not need one. (Am. Compl. at 6, 10.) However, even if the pacemaker would have been a harmful option for Plaintiff, no harm actualized because Plaintiff refused the pacemaker. As such, the VA

---

Plaintiff alleges that his wife "lost her life while doing a duty [he] should have been doing" and insufficiently pleads causation between the VA's treatment of Plaintiff and Plaintiff's wife's death. (Am. Compl. at 17, 19; Mem. in Supp. at 13.)

13

doctors' pacemaker recommendation alone cannot satisfy the elements of medical malpractice and Plaintiff fails to state a claim for which relief can be granted.

### ii. Other alleged negligence

Plaintiff discusses negligence in a conclusory way throughout his Amended Complaint, claiming for various reasons that Dr. Foster was "intentionally negligent and reckless." (*Id.* at 14.) Liberally construed, Plaintiff's conclusory claims appear to be that Dr. Foster failed to warn Plaintiff about the side effects of his medications, that the medications were incorrect, and that the VA negligently scheduled Plaintiff's pacemaker appointment without his consent. (*See* Am. Compl. at 13–15, 21–22; Pl.'s Resp. in Opp'n at 13, 15–17, ECF No. 29.)

Plaintiff explains that "[a]fter consulting with VCU medical department, and [four (4)] pharmacists, they each concluded that it was one known documented drug that causes . . . passing out spells, and . . . [t]his same drug was prescribed to [P]laintiff by the [D]efendants." (Am. Compl. at 22.) Plaintiff adds that "[t]he VCU doctors and other health care officials made it clear that if [he] had agreed to receive the pacemaker, this would not have stopped the fainting and passing out spells." (*Id.* at 16.) However, in his Amended Complaint Plaintiff never alleges that Dr. Foster failed to inform him of the side effects of either medication.[9] Additionally, Plaintiff provides merely conclusory statements, without facts, that the pacemaker would not have remedied his fainting spells.

---

[9] In his subsequent Response, Plaintiff clarifies some of these allegations of negligence but does not provide any additional facts other than more clear dates, such as Dr. Foster prescribing his medications in 2010, in which case the statute of limitations has also long passed for this part of the claim. (*See* Pl.'s Resp. in Opp'n at 13–15.)

14

Nor has Plaintiff articulated that his medications were ineffective in treating his hypertension. Also, the scheduling of an appointment that Plaintiff did not attend caused him no harm. Thus, Plaintiff does not sufficiently allege harm due to negligence by Dr. Foster or anyone else at the VA.

Therefore, to the extent Plaintiff's medical malpractice and negligence claims are not barred by the statute of limitations, they will be dismissed because Plaintiff does not sufficiently allege the elements of negligence.

### iii. Failure to provide medical documentation

Plaintiff alleges he was denied access to his medical records on several occasions between 2014 and 2024, though the Amended Complaint does not describe in detail what those denials entailed procedurally or substantively.[10] (*See id.* at 5–6, 28.) In his Motion for Summary Judgment, Plaintiff clarified his claim that the VA violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by not providing Plaintiff his medical records upon request.[11] (Mot. for Summ. J. at 2.) The United States argues that Plaintiff cannot add a new claim in a motion for summary judgment, and that "there is no private right of action under HIPAA." (Def.'s Reply at 6–7, ECF No. 30.)

---

[10] Plaintiff also showed that, at some point, he and his Patient Advocate had Plaintiff's records. (Compl. at 5 ("Mr. Nelson discovered a document in my file dated June 6, 2014, which stated, 'a pacemaker was recommended.").)

[11] In his final reply, Plaintiff states, "This is not a HIPPA (sic) appeal or complaint," (Pl.'s Reply at 1, ECF No. 32) but Plaintiff adds that it is "stunning" that he is not able to discuss the claim because it was already documented (*Id.* at 4). The Court understands Plaintiff's Reply to be an attempt at clarifying that HIPAA is his basis for his existing claim about being denied access his medical records. (*See* Am. Compl. at 5–6.)

The Court agrees with the United States. The Fourth Circuit has held there is no private cause of action against the United States under HIPAA. *See Payne v. Taslimi,* 998 F.3d 648, 660 (4th Cir. 2021). Furthermore, withholding medical records is not an independent tort, and thus, the United States has not waived its sovereign immunity for it under the FTCA. *Harvey v. United States*, 2022 WL 17405826, at *6 (E.D. Va. Dec. 2, 2022) (holding an FTCA claim may not be premised on HIPAA violation).

The agency, not the Court, can administratively help Plaintiff get his medical records. The Department of Veterans Affairs has multiple different options for requesting medical records depending on when the patient attended a VA hospital.[12] In addition to its online portal, the agency provides an "Individuals' Request for a Copy of Their Own Health Information" online form (VA Form 10-5345a), and also has in-person medical records offices.[13] Plaintiff can file an administrative claim or appeal his initial claim with the Department of Veterans Affairs to adjudicate any issues.

### iv. Medical extortion and blackmail claims

Finally, the United States argues that it has not waived sovereign immunity for the "common law claims for medical extortion and blackmail" under the FTCA, and that

---

[12] The Department of Veterans Affairs, formerly known as the "Veterans Administration," both commonly called the "VA," is the administrative agency which oversees the VA hospitals including McGuire, where Plaintiff was a patient.

[13] *See Get Your VA Medical Records Online*, U.S. DEP'T VETERANS AFF.S (Apr. 26, 2024), https://www.va.gov/health-care/get-medical-records/ (online portal); *How to Get Your Medical Records from Your VA Health Facility*, U.S. DEP'T VETERANS AFF.S (Aug. 19, 2022), https://www.va.gov/resources/how-to-get-your-medical-records-from-your-va-health-facility/.

even if it had, Virginia does not recognize a cause of action for extortion or blackmail. (Mot. to Dismiss at 11.)

First, the Court agrees "that there is no common law action permitting civil recovery for extortion." *Browne v. Waldo*, No. 3:22-cv-648, 2023 WL 2974483, at *8 (E.D. Va. Apr. 17, 2023) (Hudson, J.) (citing *Johnson v. Freedman D.D.S.*, No. 110411, 1992 WL 884626, at *2 (Va. Cir. Apr. 8, 1992)).

Second, blackmail is a federal crime defined by the United States Code, not an action recognized under Virginia tort law. 18 U.S.C. § 873; *see Harnois v. Lamont*, 83 Va. Cir. 473, 2011 WL 8964938, at *3 (Va. Cir. Nov. 4, 2011) ("Some of the causes of action pleaded do not exist, e.g., extortion (blackmail)."). Consequently, because blackmail is only recognized criminally, Plaintiff cannot raise it as a civil claim in tort. Therefore, neither Plaintiff's allegation for medical extortion nor blackmail state a claim.

Likewise, all of Plaintiff's claims will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, either because Plaintiff failed to raise the claim within the statute of limitations for the FTCA or because Plaintiff failed to allege sufficient facts to state a claim in tort against the United States.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the United States' Motion to Dismiss (ECF No. 25) under Rule 12(b)(6), and will deny Plaintiff's Motion for Summary Judgment (ECF No. 28). These claims will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and to Plaintiff, who appears *pro se*.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **Nov. 21, 2024**
Richmond, Virginia